### No. 2191.
### Second Circuit Appeal.

---

### CAPITAL LIFE INSURANCE COMPANY OF COLORADO v. JOSEPH R. DUCOTE ET AL.

(June 13, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Suretyship—Par. 16 17, 18, 19.**
   A bond given to secure a contract of agency and one which states was of even date with the bond does not hold the sureties for a debt which an agent incurred at a previous time and owed at the time of the making of the bond, even though the clause, "Including all moneys so received prior to the date of this instrument (if any such there be), as well as those received thereafter." The bond was executed with the contract of agency and consequently a debt incurred before could not have come under the contract or the bond.

Appeal from Fourteenth Judicial District Court of Louisiana, Parish of Avoyelles. Hon. S. Allen Bordelon, Judge.

This is a suit to hold the sureties on a bond.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

S. W. Gardiner, of Ville Platte; Bordelon & Norman, of Marksville, attorneys for plaintiff, appellee.

W. E. Couvillion, of Marksville, attorney for defendants, appellants.

CARVER, J. Plaintiff sues Joseph R. Ducote, as principal, and Mrs. C. J. Ducote and Louis A. Ducote, as sureties, on a bond alleged to have been given by the principal to secure the faithful performance of his duties as plaintiff's agent.

Plaintiff alleges that he failed to account for $240.00 principal, covered by the bond, for which and for interest and attorney's fees thereon, it asks judgment.

Annexed to the petition are a copy of the bond and an itemized account of the transactions between plaintiff and Joseph R. Ducote.

The sureties asked oyer of the contract referred to in the bond, in response to which plaintiff filed a contract dated March 29, 1915, and also a supplemental contract bearing the same date. On the back of the main contract was the following notation, namely:

"Cancelled, February 1, 1916."

And Miss Glass, plaintiff's bookkeeper, testifies that it was cancelled on that date.

Before answering, the sureties plead that the petition, taken in connection with the exhibits furnished, disclosed no cause or

right of action. On this exception being overruled, the sureties admitted signing the bond but plead that it was only for the faithful performance of the principal's duties as agent under the contract alluded to in the bond, namely, bearing even date therewith, and denied that the contracts filed were those for which the bond was given.

The defense of the principal was a general denial.

The district judge gave plaintiff judgment against all the defendants, and the sureties alone appeal.

The bond is dated March 1, 1916.

The itemized account begins April 4, 1915, with an item of cash advanced of $300.00. Thereafter in August, September, October, November and December, 1915, and January, 1916, down to the 31st of that month, it debits Ducote with various items, most of them being premiums on policies.

On February 1, 1916, the day the contract was cancelled, the debits totaled nearly $1100.00, with no credits at all, except $1.00 itemized thus: "Bal. Snead—Overpaid", and "Invoice Pioneer Tel. Co. Pd. by Ducote", 75 cents, and except, also, a check, under date of December 27, 1915, which, though, was unpaid and charged back on January 13, 1916.

Between February 1, 1916, when the contract was cancelled, and March 1, 1916, when the bond was given, are debits amounting to $29.89, only two items of which, amounting to $16.65, were for premiums.

After March 1, 1916, are debits as follows:

| | |
|---|---:|
| March 11, C. Evans, new policy | $ 9.97 |
| March 31, J. H. Nicol, new policy | 20.98 |
| April 13, J. Detrick, new policy | 19.81 |
| November 14, settlement R. S. Brough retained | 83.70 |

After this the only debits are recharging of unpaid checks and expenses in connection therewith.

The debit relating to the Brough matter was probably intended to be November 14, 1915, instead of 1916, the account showing transaction on November 11, 1915.

On the day the bond was given the account showed a debit against the principal of over $1103.00, on which nothing had been paid except the 75 cents above mentioned.

The main contract filed in evidence in clause 20 says:

"The agent agrees that he will remit with the application the premium due or to become due on account of the policy applied for."

The pertinent parts of the conditional clause of the bond are as follows:

"The condition of this obligation is such, that whereas the above bounden Dr. Jos. R. Ducote, (hereinafter called the 'Agent'), has been under an instrument of writing of even date herewith and hereby referred to, appointed by the company, as its agent, for the purpose of procuring applications for life insurance, and performing such other duties in connection therewith as may be entrusted to him. Now, if the said agent shall pay or hand over all moneys payable in any event to the company which shall at any time be received by him, or for which he shall be accountable or liable", * * * "including all moneys so received prior to the date of this instrument (if any such there be), as well as those received thereafter; as, also, all moneys which he now owes, or hereafter may owe, the company on account of advances made or to be made to him in cash or otherwise, and shall now, and at all times hereafter, well, truly and faithfully do and perform all the duties appertaining to his said agency * * *

"and shall also on the first days of each month hereafter account for, remit and pay over to the company, or whenever otherwise required so to do by the company, at its office, all moneys due by or from him" * * * "then this obligation shall be void."

## OPINION.

We think the exception of no cause or right of action should have been sustained.

The bond was clearly given to secure a contract of agency and one which it states was of even date with the bond. It clearly contemplated that the principal was thereafter to sell insurance. In all probability the compensation he was to derive from this business was the leading motive which induced the sureties to sign. But at that time there was no contract of agency, the former agency having been terminated a month before and plaintiff not contemplating any renewal of it. There is no allegation or proof that the sureties were informed that Joseph R. Ducote was no longer the agent but had been discharged and probably for his failure to account, and the statement in the bond that he was appointed that day gave them every right to presume that he was just entering upon the employment. It also gave them the right to presume that he was not indebted to plaintiff.

The clause—

"Including all moneys so received prior to the date of this instrument (if any such there be) as well as those received thereafter"

was no notice at all that the principal was then indebted to plaintiff. The words "moneys so received" in this clause clearly relate back to the words "moneys payable in any event to the company which shall at any time be received by him or for which he shall be accountable or liable".

The phrase "moneys payable in any event to the company which shall at any time be received by him or for which he shall be accountable or liable" clearly mean, in view of the preamble, moneys received by him or accountable for by him under the contract with reference to which the bond states it was given.

Under such a contract, namely: One made the same day, how could there be any moneys so received or so accountable for?

Evidently the contracting parties had entirely different purposes in view in asking for and giving the bond. That of the sureties was to help a relative to obtain lucrative employment. They had no reason, so far as the record shows, to suppose there was any back debt. They contemplated only such liabilities as might arise from future transactions.

Plaintiff had no intention of permitting such liability to arise and its sole purpose was to get security for a back debt.

In candor and good faith it should have asked the sureties to sign, not a bond to secure a contract that day made, but a note to secure one made, broken and cancelled long before that.

It is likely that if the sureties had been asked to sign such an obligation and had been informed that no continuance of agency was intended, they would have refused to do so.

Under the situation presented in this case, that would be the effect of the bond if plaintiff's contention were sustained.

Plaintiff's counsel argue:

1. That there is no evidence that the bond was not that mentioned in the agency contract.

But that is not the point. The point is that the agency contracts are not those contemplated by the bond. The sureties signed the bond and it is the measure of

their liability. They did not sign the contracts.

2. That the reference in the bond to the date of the agency contract was a mere oversight due to using a printed form.

There is no allegation or proof of this, though, and no allegation or proof that the sureties had been informed that the agency contract previously made had been cancelled.

If the real date of the contract, March 29, 1915, had been put in the bond and the language of the bond made clear that the sureties were assuming obligations arising under that contract, the clause in the bond heretofore quoted reading:

"Including all moneys so received prior to the date of this instrument (if any such there be)"

would have had an entirely different meaning from what it has when used in a bond referring to a contract made contemporaneously therewith.

We are constrained to differ from our learned brother of the lower court, and it is decreed that the judgment of that court as relates to the sureties be set aside and that plaintiff's demand against them be rejected and disallowed. Plaintiff to pay the costs of both courts.